1  DAVID J. HACKER
   California Bar No. 249272
2  Illinois Bar No. 6283022
   HEATHER GEBELIN HACKER
3  California Bar No. 249273
   Arizona Bar No. 024167
4  ALLIANCE DEFENDING FREEDOM
5  101 Parkshore Drive, Suite 100
   Folsom, California 95630
6  Phone: (916) 932–2850
7  dhacker@ADFlegal.org
   hghacker@ADFlegal.org
8
   Attorneys for Plaintiffs
9

10            UNITED STATES DISTRICT COURT
11       FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12  **NATIONAL INSTITUTE OF FAMILY**   Case No. **'15CV2277 JAH DHB**
    **AND LIFE ADVOCATES d/b/a NIFLA**,
13  a  Virginia  corporation**;  PREGNANCY**
    **CARE  CENTER  d/b/a  PREGNANCY**
14  **CARE CLINIC**, a California corporation**;**
    and      **FALLBROOK      PREGNANCY**
15  **RESOURCE    CENTER**,   a   California
16  corporation**;**

17        **Plaintiffs,**                       **VERIFIED COMPLAINT FOR**
                                                 **DECLARATORY,**
18  **v.**                                       **INJUNCTIVE AND OTHER**
                                                 **RELIEF**
19
    **KAMALA    HARRIS**,  in   her   official
20  capacity as Attorney General for the State
    of        California;        **THOMAS**
21  **MONTGOMERY**, in his official capacity
    as County Counsel for San Diego County;
22  **MORGAN FOLEY**, in his official capacity
    as City Attorney for the City of El Cajon,
23  CA; and **EDMUND G. BROWN, JR.**, in

1  his official capacity as Governor of the
2  State of California;

      **Defendants.**

3  _____

4      Come now the Plaintiffs, by and through their attorneys, and for their

5  causes of action against Defendants aver the following:

6                        **INTRODUCTION**

7      1.    This case is a federal civil rights action brought pursuant to 42

8  U.S.C. § 1983 challenging the constitutionality of California Assembly Bill 775,

9  the Reproductive FACT Act (hereinafter the "Act"), which was signed by

10  California Governor Edmund Gerald Brown on October 9, 2015. A copy of the

11  Act is attached hereto as Exhibit A.

12      2.    Plaintiffs are a national non-profit pro-life membership organization

13  with 111 affiliates in California, and two of those affiliates in San Diego County.

14  They seek to provide help and pro-life information to women in unplanned

15  pregnancies so that they will be supported in choosing to give birth, and practical

16  medical or non-medical support free of charge in support of Plaintiffs' pro-life

17  viewpoint.

18      3.    The Act, however, imposes government compelled speech upon the

19  Plaintiff pregnancy centers due to their support for pregnant women, and in ways

20  that undermine the centers' messages.

21      4.    It requires licensed medical pregnancy centers such as Plaintiff

22  Pregnancy Care Clinic (PCC) and other similar members of Plaintiff National

23  Institute of Family and Life Advocates (NIFLA) to post a disclosure saying the

State of California provides free or low-cost abortion and contraception services and providing a phone number to refer or arrange for such services.

5.     The Act also requires unlicensed non-medical pregnancy centers, such as Plaintiff Fallbrook Pregnancy Resource Center (Fallbrook) and other similar NIFLA members, to post disclaimers within their facilities and in all their advertising materials negatively emphasizing that they do not have a licensed medical provider on staff.

6.     Such disclaimers must be posted merely because the Plaintiffs serve pregnant women, and not with any prerequisite that a center has engaged in improper behavior or has suggested they have a licensed medical provider.

7.     The Act is therefore unconstitutional under the First Amendment to the United States Constitution. It is a classic example of compelled speech in violation of the Free Speech Clause. The law is expressly content-based both because it compels the content of speech and because it regulates only speakers who wish to discuss the subject of pregnancy rather than any other health topic. The law is also viewpoint based for forcing licensed facilities to promote abortion, and by exempting facilities that offer certain family planning or Medi-Cal services. For similar reasons the Act violates the free speech clause of the California Constitution, Art. I, Sec. 2(a).

8.     The law is also impermissibly vague under the Due Process Clause of the Fourteenth Amendment with respect to various terms applicable to unlicensed centers.

9.     The Act also violates federal statutory law, the Coats-Snowe

3

Amendment, 42 U.S.C. § 238n, that protects licensed health care entities from being required to refer for abortion or make arrangements for such referrals.

10.     Accordingly, preliminary and permanent injunctive and declaratory relief against the Act are warranted.

11.     PCC and Fallbrook are directly regulated by the Act.

12.     NIFLA asserts organizational standing on behalf of its California members, which are licensed or unlicensed centers throughout the State of California that, just like PCC and Fallbrook, the Act regulates and compels to speak in violation of their views and mission. As discussed below, NIFLA's claims fit comfortably within the Supreme Court's organizational standing to allow it to obtain judicial relief for its members.

13.     The Act goes into effect January 1, 2016.

14.     Therefore preliminary injunctive relief is needed before that date in order to prevent irreparable harm to the rights of Plaintiffs and NIFLA's California members.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202; and costs and attorneys fees under 42 U.S.C. § 1988(b). This Court has supplemental jurisdiction over the Plaintiffs' claim under the free speech clause of the California Constitution pursuant to 28 U.S.C. § 1367.

16.     Venue lies in the Federal District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b).  A substantial part of the actions or omissions giving rise to this case occurred within the District, and at least one Defendant resides in this District.

## **IDENTIFICATION OF THE PARTIES**

**Plaintiffs**

17.     Plaintiff National Institute of Family and Life Advocates is a religious not-for-profit corporation duly incorporated under the laws of Virginia, with its principal place of business at 5610 Southpoint Ctr. Blvd., #103, Fredericksburg, VA 22407.

18.     It is comprised of member pregnancy centers from across the nation, including 111 in the state of California, that provide medical or non-medical information and services without charge to their clients, and are therefore regulated by the Act.

19.     Seventy-three of NIFLA's California members provide licensed medical services, while thirty-eight provide only non-medical services.

20.     Plaintiff Pregnancy Care Clinic is a religious not-for-profit corporation duly incorporated under the laws of California, with its principal place of business at 677 S. Magnolia Avenue, El Cajon, CA, 92020.

21.     It provides pregnancy-related licensed medical as well as non-medical information and services without charge to its clients under the supervision of its executive director, Josh McClure, and in furtherance of its religious beliefs.

22.    Plaintiff Fallbrook Pregnancy Center is a religious not-for-profit corporation duly incorporated under the laws of California, with its principal place of business at 113 E. Hawthorne Street, Fallbrook, CA 92028, where it provides pregnancy-related non-medical information and services without charge to its clients under the supervision of its executive director, Carolyn Koole, and in furtherance of its religious beliefs.

**Defendants**

23.    Defendant Kamala Harris is the Attorney General for the State of California and is sued in her official capacity. She is responsible under the Act for enforcing its provisions against entities in violation thereof including the Plaintiffs and NIFLA's California Members.

24.    Defendant Thomas Montgomery is the County Counsel for San Diego County, California and is sued in his official capacity. He is responsible under the Act for enforcing its provisions against entities in violation thereof in San Diego County, including the Plaintiff facilities and NIFLA's California Members in San Diego County.

25.    Defendant Morgan Foley is the City Attorney for City of El Cajon, California and is sued in his official capacity. He is responsible under the Act for enforcing its provisions against entities in violation thereof in El Cajon, including the Plaintiff facilities and NIFLA's California Members in El Cajon.

26.    Defendant Edmund G. Brown, Jr., is the Governor of the State of California, and is sued in his official capacity. He is the chief executive of the State of California and is responsible for funds that the state has received from

1   the federal government subjecting it to 42 U.S.C. § 238n.

2

3                          **FACTUAL ALLEGATIONS**

4        27.    Plaintiffs provide compassionate and loving information and services

5   to serve the medical, emotional, and material needs of women who face

6   unplanned pregnancies to help them choose birth for their children.

7   **Pregnancy Care Clinic**

8        28.    Pregnancy Care Clinic (hereinafter "PCC") exists to serve women

9   and their unborn children.

10       29.    PCC provides both medical and non-medical pro-life information

11   and services for no charge to women in unplanned pregnancies as a licensed

12   primary care provider.

13       30.    PCC is licensed by the California Department of Public Health as a

14   free community clinic, and is a licensed clinical laboratory.

15       31.    PCC operates as a medically licensed primary care center in the State

16   of California.

17       32.    PCC provides its services to women in unplanned pregnancies

18   pursuant to its pro-life viewpoint, desiring to empower the women it serves to

19   choose life for their child, rather than abortion.

20       33.    Medical services provided by PCC include: urine pregnancy testing,

21   ultrasound examinations, medical referrals, prenatal vitamins, information on

22   STDs, information on natural family planning, health provider consultation, and

23   other clinical services.

34.     The medical team at PCC consists of two Obstetrician/Gynecologists, one Radiologist, one Anesthesiologist, one Certified Nurse Midwife, one Nurse Practitioner, ten Nurses, and two Registered Diagnostic Medical Sonographers.

35.     Non-medical services provided by PCC include: peer counseling and education, emotional support, maternity clothes, baby supplies, support groups, and healthy family support.

36.     PCC is a religious organization and pursues its pro-life message and activities as an exercise of its religious belief is a gift of God that should not be destroyed by abortion.

**Fallbrook Pregnancy Center**

37.     Fallbrook Pregnancy Center (hereinafter "Fallbrook") provides non-medical services for no charge to women in unplanned pregnancies in furtherance of its pro-life viewpoint.

38.     Fallbrook provides free pregnancy test kits that women administer and diagnose themselves, educational programs, resources and community referrals, maternity clothes, and baby items.

39.     Fallbrook contracts with a separate organization that is a licensed medical provider of ultrasound services. Fallbrook refers women to that provider's separate mobile facility located nearby.

40.     Fallbrook is a religious organization and pursues its pro-life message and activities as an exercise of its religious belief that human life is a gift of God that should not be destroyed by abortion.

**National Institute of Family and Life Advocates**

41. NIFLA is a non-profit membership organization comprised of a network of both medical and non-medical centers providing pro-life information services to women in unplanned pregnancies.

42. NIFLA is incorporated as a religious organization.

43. NIFLA provides both medical and non-medical pro-life pregnancy centers with legal resources and counsel, with the aim of developing a network of life-affirming ministries in every community across the nation in order to achieve an abortion-free America.

44. NIFLA's mission is to empower the choice for life by: equipping pregnancy centers with legal counsel and support; enabling pregnancy centers to convert to medical clinic status; and energizing pregnancy centers with a renewed vision for the future.

45. NIFLA has 111 members in California.

46. Seventy-three of NIFLA's California members are properly licensed to provide medical services, in situations similar to PCC.

47. Thirty-eight of NIFLA's California members are not medically licensed and therefore provide only non-medical services, similar to Fallbrook.

48. Most of NIFLA's California members are religious organizations that pursue their pro-life message and activities as an exercise of their religious beliefs.

49. NIFLA's own religious mission includes helping those members advance their religious beliefs.

50.     NIFLA's California members are regulated under the Act as either medical centers or non-medical centers.

51.     NIFLA's California members are subject to the Act's compelled speech requirements.

52.     NIFLA has organizational standing to represent all of its member pregnancy centers, both licensed and unlicensed, from the State of California. See *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988).

53.     The members of NIFLA would otherwise have standing to sue in their own right in this case.

54.     The interests that NIFLA seeks to protect are germane to NIFLA's purpose, including the purpose to support its pro-life pregnancy center members and enable them to carry out their missions consistent with their pro-life and religious viewpoints.

55.     Neither the claims asserted nor the relief requested requires participation of all of NIFLA's individual members in this suit, but can be awarded to NIFLA's members as a group.

**Assembly Bill 775, the Reproductive FACT Act**

56.     The Legislature indicates that the purpose of the Act "is to ensure that California residents make their personal reproductive health care decisions knowing their rights and the health care services available to them." Exhibit A.

57.     The Act defines "licensed covered facility" as a

facility licensed under Section 1204 or an intermittent clinic operating under a primary care clinic pursuant to subdivision (h) of Section 1206, whose primary purpose

is providing family planning or pregnancy-related services, and that satisfies two or more of the following: (1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women; (2) The facility provides, or offers counseling about, contraception or contraceptive methods; (3) The facility offers pregnancy testing or pregnancy diagnosis; (4) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling; (5) The facility offers abortion services; (6) The facility has staff or volunteers who collect health information from clients.

*Id.*

58.     The Act mandates that a licensed covered facility to "disseminate to clients on site the following notice in English and in the primary threshold languages for Medi-Cal beneficiaries as determined by the State Department of Health Care Services for the county in which the facility is located." *Id.*

59.     The required notice for licensed covered facilities must state the following: "California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women. To determine whether you qualify, contact the county social services office at [insert the telephone number]." *Id.*

60.     The notice must be displayed in one of the following ways:

(A) A public notice placed in a conspicuous place where individuals wait that may be easily read by those seeking services from the facility. The notice shall be at least 8.5 inches by 11 inches and written in no less than 22-point type;

(B) A printed notice distributed to all clients in no less

11

than 14-point type; or
(C) A digital notice distributed to all clients that can be read at the time of check-in or arrival, in the same point type as other digital disclosures. A printed notice as described in subparagraph (B) shall be available for all clients who cannot or do not wish to receive the information in digital format.

*Id.*

61.    Upon information and belief, county social services in California provide or refer women for abortions.

62.    Therefore the Act requires "licensed covered facilities" to provide referrals for abortion and/or arrange for referrals for abortion by requiring such centers to provide contact information for the local county social services to all clients so that they may procure an abortion.

63.    PCC and NIFLA's licensed medical pregnancy center members meet the definition of licensed covered facilities for the purpose of the Act.

64.    PCC is a facility licensed as a primary care clinic under Section 1204.

65.    PCC's primary purpose is providing pregnancy-related information and services.

66.    PCC offers obstetric ultrasounds or obstetric sonograms to pregnant women.

67.    PCC offers pregnancy testing or pregnancy diagnosis.

68.    PCC advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.

69. PCC has staff or volunteers who collect health information from clients.

70. NIFLA's licensed medical facility members meet the Act's definition of "licensed covered facility" for reasons substantially similar to PCC.

71. PCC and NIFLA's licensed medical pregnancy center members are subject to the Act's required disclosures as a "licensed covered facility."

72. The Act defines "unlicensed covered facility" as a

> facility that is not licensed by the State of California and does not have a licensed medical provider on staff or under contract who provides or directly supervises the provision of all of the services, whose primary purpose is providing pregnancy-related services, and that satisfies two or more of the following: (1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women; (2) The facility offers pregnancy testing or pregnancy diagnosis; (3) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling; (4) The facility has staff or volunteer who collect health information from clients.

*Id.*

73. An unlicensed covered facility "shall disseminate to clients on site and in any print and digital advertising materials including Internet Web sites, [a notice] in English and in the primary threshold languages for Medi-Cal beneficiaries as determined by the State Department of Health Care Services for the county in which the facility is located." *Id.*

74. The notice shall state: "This facility is not licensed as a medical facility by the State of California and has no licensed medical provider who

13

provides or directly supervises the provision of services." *Id.*

75.   The onsite notice must be "at least 8.5 inches by 11 inches and written in no less than 48-point type, and shall be posted conspicuously in the entrance of the facility and at least one additional area where clients wait to receive services." *Id.*

76.   The notice in the advertising material must be "clear and conspicuous. 'Clear and conspicuous' means in larger point type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language." *Id.*

77.   The Act does not define "digital advertising materials" beyond saying it includes "Internet Web Sites."

78.   The Act is vague about what kinds of materials count as "digital advertising materials" because the meaning of the term is arbitrary and causes ordinary people to guess as to its meaning.

79.   Advertisements placed on "Internet Web Sites" have limits on their size, such as in the number of characters that can be used.

80.   For example, Google limits the number of characters posted in a headline, URL, or description line.

81.   Inserting the disclosures into Plaintiffs' advertisements would severely restrict, or preclude altogether, the space and number of characters they could use to recite their own messages in some advertisements placed on "Internet Web Sites."

82.   Fallbrook, and NIFLA's non-medical pregnancy center members in California, appear to qualify as unlicensed covered facilities for the purpose of the Act.

83.   Fallbrook is not licensed by the State of California.

84.   Fallbrook does not have a licensed medical provider on staff or under contract who provides or directly supervises provision of all its services.

85.   Fallbrook has a licensed medical provider under contract to take referrals from Fallbrook of women who want an ultrasound, and then to provide such ultrasounds in a separate nearby mobile facility owned by the contractor.

86.   Fallbrook does not contract with licensed medical providers to provide all of "the services" Fallbrook provides, because none of Fallbrook's other services are medical.

87.   Fallbrook has a nurse employee and several nurses among its volunteer counselors.

88.   Fallbrook's nurses do not provide medical services onsite, but are available to provide information about specific topics such as breastfeeding, diet, or printed brochures that discuss medical studies, or to refer clients to externally provided services.

89.   Fallbrook does not itself provide obstetric ultrasounds or obstetric sonograms.

90.   Fallbrook contracts with an outside provider, which provides ultrasound services in a nearby separate facility.

91.   The Act is vague about which "services" Fallbrook's nurses need to

1    "provide[] or directly supervise[]" in order to disqualify Fallbrook from the

2    definition of an "unlicensed covered facility."

3    92.    The Act is vague about whether Fallbrook offers "obstetric

4    ultrasounds, obstetric sonograms, or prenatal care to pregnant women."

5    93.    Fallbrook does not offer medical prenatal care.

6    94.    Fallbrook offers non-medical care to pregnant women in various

7    forms.

8    95.    Fallbrook does not test bodily fluids to determine pregnancy, nor

9    does it diagnose pregnancy or pregnancy tests.

10    96.    Fallbrook offers free pregnancy test kits that women self-administer

11    and self-diagnose themselves.

12    97.    The Act does not define "offers pregnancy testing or pregnancy

13    diagnosis."

14    98.    The Act is vague about the meaning of "offers pregnancy testing or

15    pregnancy diagnosis" because the meaning of the term is arbitrary and causes

16    ordinary people to guess as to its meaning.

17    99.    Fallbrook advertises that prenatal sonography is available,

18    100.    The sonography that Fallbrook advertises is provided by nearby

19    separate licensed medical provider with whom Fallbrook contracts.

20    101.    Fallbrook advertises that it provides non-medical pregnancy options

21    counseling.

22    102.    Fallbrook advertises that it distributes free pregnancy test kits, which

23    the women self-administer.

16

103.   Fallbrook does not offer to engage in testing or diagnosis of pregnancy.

104.   Fallbrook has staff or volunteers who collect information from clients that relates to their possible pregnancies.

105.   The Act does not define "health information."

106.   The Act is vague about what kind of information constitutes "health information" because the meaning of the term is arbitrary and causes ordinary people to guess as to its meaning.

107.   Fallbrook may qualify as an "unlicensed covered facility" under the Act.

108.   The Act does not clearly define "unlicensed covered facility."

109.   The Act is vague about whether Fallbrook or a similar center qualifies as "unlicensed covered facility" because the meaning of the term is arbitrary and causes ordinary people to guess as to its meaning.

110.   Fallbrook has a reasonable fear that it does qualify and is subject to the Act.

111.   NIFLA's non-medically licensed members in California may qualify as an "unlicensed covered facility" under the Act.

112.   The Act is vague about whether they qualify, for reasons substantially similar to those involving Fallbrook.

113.   The Act does not apply to the following: (1) A clinic directly conducted, maintained, or operated by the United States or any of its departments, officers, or agencies; (2) A licensed primary care clinic that is

17

enrolled as a Medi-Cal provider and a provider in the Family Planning, Access, Care, and Treatment Program. *Id.* (hereinafter "the Exemption").

114.   Neither PCC, Fallbrook, nor NIFLA's California members are clinics directly conducted, maintained, or operated by the United States or any of its departments, officers, or agencies, nor licensed primary care clinics that are enrolled as a Medi-Cal provider and a provider in the Family Planning, Access, Care, and Treatment Program.

115.   Upon information and belief, the Act's Exemption, in purpose and effect, applies to facilities which provide abortion services, freeing them from the Act's disclosure requirements, while leaving pro-life facilities subject to them.

116.   Covered facilities which fail to comply with the Act are liable for a civil penalty of $500 for a first offense and $1000 for each subsequent offense. *Id.*

117.   The Attorney General, city attorney, or county counsel is empowered to bring an action to impose a civil penalty pursuant to the Act after: (1) "Providing the covered facility with reasonable notice of noncompliance, which informs the facility that it is subject to a civil penalty if it does not correct the violation within 30 days from the date the notice is sent to the facility"; and (2) "Verifying that the violation was not corrected" within the 30-day period. *Id.*

118.   Fallbrook and NIFLA's non-licensed California members engage in speech, services and advertising that cannot be changed, have disclosures added, or corrected to comply with the Act in less than 30 days after receiving notice of a warning of violation under the Act.

18

119.   The Act compels PCC, Fallbrook, and NIFLA's California members (hereinafter "Plaintiff Facilities") to engage in government-mandated speech.

120.   The pregnancy discussions and help provided by Plaintiff Facilities are of an ideologically sensitive nature.

121.   Forcing the Act's disclosures on Plaintiff Facilities' speech is detrimental to their mission of counseling and helping women from their viewpoint.

122.   Plaintiff Facilities desire not to utter the disclosures required by the Act.

123.   Plaintiff Facilities intend to not comply with the Act.

124.   Plaintiff Facilities desire to continue engaging in their speech and expressive services while refusing to post, distribute, or otherwise communicate the required compelled statements.

125.   Plaintiff Facilities' refusal to comply with the Act would subject them to fines and prosecution by Defendants under the Act.

126.   Plaintiff Facilities fear the harms of prosecution under the Act if they fail to comply.

127.   Plaintiff Facilities are non-profit organizations with limited funding and relatively small budgets.

128.   The Act's penalties would significantly harm Plaintiff Facilities' ability to continue their expressive operations.

129.   The Act imposes three untenable choices on Plaintiff Facilities: succumb to their fear of prosecution and comply with the Act in violation of their

expressive views and religious beliefs; continue their speech and services without complying with the Act and be prosecuted, penalized, and injured in their ability to pursue their expressive operations; or cease their expressive activities and services altogether.

130.  Plaintiffs face a credible threat of adverse state action due to the Act.

131.  Requiring Plaintiff Facilities to utter the Act's disclosures forces Plaintiff Facilities to undermine the content, context and tone of the viewpoint that they wish to deliver in their pro-life messages.

132.  Requiring the religious Plaintiff Facilities to utter the Act's disclosures imposes a burden on their exercise of their religious beliefs by requiring them to promote abortion and/or to undermine their pro-life message of love and support which they pursue because of their religious beliefs.

133.  The Act imposes an impermissible penalty and chill on Plaintiff Facilities' speech, subjecting Plaintiff Facilities to irreparable harm.

134.  The Act's regulation of unlicensed facilities imposes penalties on unlicensed Plaintiff Facilities based on vague terms that do not provide adequate notice of whether or how the law applies and what entities must comply.

135.  The Act's requirement of "clear and conspicuous" disclosure language on unlicensed Plaintiff Facilities' "digital advertising materials including Internet Web sites" is vague regarding the location and manner in which the disclosures must be placed.

136.  The Act's requirement of disclosure language on unlicensed Plaintiff Facilities' advertising materials burdens the size, content, viewpoint and tone of

their message.

137.   The Act's disclosure requirements for licensed Plaintiff Facilities requires that they "provide referrals for . . . abortions" or "make arrangements" for such referrals, in the meaning of 42 U.S.C. § 238n.

138.   The licensed medical Plaintiff Facilities are health care entities protected under 42 U.S.C. § 238n.

139.   The health providers in Plaintiff Facilities responsible for compliance with the Act include individual physicians.

140.   The State of California receives federal funding including "governmental payments provided as reimbursement for carrying out health-related activities" that subject it to 42 U.S.C. § 238n.

141.   42 U.S.C. § 238n is an "Act of Congress providing for the protection of civil rights" belonging to the Plaintiff Facilities, under 28 U.S.C. § 1343.

142.   Licensed Plaintiff Facilities have both individual rights under 42 U.S.C. § 238n and remedies under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 to bring this action for the violation of their rights under 42 U.S.C. § 238n.

143.   Enforcement of the Act will irreparably harm Plaintiff Facilities by infringing upon their First Amendment rights to free speech and religious exercise; the Fourteenth Amendment right to due process for the unlicensed facilities and freedom from uncabined government discretion; and the individual rights contained in 42 U.S.C. § 238n for the licensed facilities.

144.   Defendants are vested with enforcing the Act against Plaintiff Facilities.

145.   Passage of the Act into law represents an imminent, concrete and reliable threat that Defendants will enforce the Act against Plaintiff Facilities.

146.   Enjoining Defendants from enforcing the Act is necessary to protect Plaintiff Facilities from the chill and punishment imposed on their rights.

147.   Each and all of the real and threatened enforcement actions alleged of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies, and usages of the State of California.

148.   Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### FIRST CLAIM: VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

149.   Paragraphs 1–148 are incorporated as if fully set forth herein.

150.   The First Amendment to the United States Constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech."

151.   The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

152.   The Act unconstitutionally restricts Plaintiff Facilities' rights of free speech, which includes the right to refrain from speaking, to choose how and when to deliver particular messages, and the right to refuse to speak a government-dictated message.

153.   The Act unconstitutionally forces Plaintiff Facilities, on pain of

government penalty, to engage in government disclaimers that Plaintiff Facilities would not otherwise recite, that undermine Plaintiff Facilities' message, and that contradict Plaintiff Facilities' viewpoint from which they speak.

154. The Act is unconstitutionally and substantially overbroad.

155. The Act's imposition of disclosures on unlicensed Plaintiff Facilities' advertisements is an unjustified restriction of their ability to advertise their messages.

156. The Act is unconstitutionally underinclusive, because by its Exemption it omits many centers that provide pregnancy related services.

157. The Act imposes an unconstitutional chill and penalty on Plaintiff Facilities' speech, and without declaratory and injunctive relief, will continue to do so.

158. The Act is a content-based regulation of speech.

159. The Act unconstitutionally discriminates against Plaintiff Facilities' speech based on their viewpoint, including because it requires licensed facilities to promote abortion options, and it exempts from the Act's requirements facilities that provide certain family planning or Medi-Cal services.

160. The Act poses an unconstitutional risk of viewpoint discrimination by conferring unfettered discretion on government officials to interpret the Act's provisions in deciding which unlicensed facilities must comply.

161. The Act is subject to strict scrutiny.

162. The Act does not promote any legitimate, or compelling, government interest, and Defendants lack any evidence or sufficient evidence to demonstrate

the existence of such an interest.

163.    The Act is not tailored at all, much less narrowly tailored, to further any governmental interest, and it does not do so by a means least restrictive of Plaintiff Facilities' speech.

164.    Defendants have ample alternative channels to achieve any alleged interest without imposing the Act's burdens on the speech of Plaintiffs.

165.    The Act is an unconstitutional restriction of speech under any standard applicable to the licensed Plaintiff Facilities.

166.    The Act is unconstitutional not only as applied to Plaintiff Facilities, but on its face as applied to any facility.

167.    Accordingly, the Act violates the First Amendment of the United States Constitution.

168.    Therefore, the Act and Defendants' enforcement thereof unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the relief requested below, pursuant to 42 U.S.C. §1983.

169.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

**SECOND CLAIM: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION; ALLEGED BY THE NON-LICENSED PLAINTIFF FACILITIES**

170.    Paragraphs 1–148 are incorporated as if fully set forth herein.

171.    The Fourteenth Amendment of the United States Constitution's right to due process protects against the government's imposition of penalties such as

fines based on vague terms that do not give regulated entities adequate notice of whether or how the law applies and what entities can do to comply.

172.   The Act defines "unlicensed covered facility" as a:

> [F]acility that is not licensed by the State of California and does not have a licensed medical provider on staff or under contract who provides or directly supervises the provision of all of the services, whose primary purpose is providing pregnancy-related services, and that satisfies two or more of the following: (1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women; (2) The facility offers pregnancy testing or pregnancy diagnosis; (3) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling; (4) The facility has staff or volunteers who collect health information from clients.

Exh. A.

173.   The Act's unlicensed facility definition is vague because it does not adequately define: (a) which "services" a nurse or contract medical provider must provide or directly supervise to disqualify a facility from the definition; (b) "directly supervise"; (c) "offers" obstetric ultrasounds, when the ultrasounds are performed separately by a contract licensed provider; (d) "offers pregnancy testing or diagnosis" when the facility distributes pregnancy test kits that women self-administer but the facility does not test or diagnose pregnancy; or (e) "health information."

174.   Fallbrook, and NIFLA's unlicensed facility members in California, appear to fit the definition of "unlicensed covered facility," but they cannot know for sure because of the Act's vagueness.

25

175.   The Act by appearance and intent targets pro-life pregnancy centers like Plaintiff Facilities, and therefore they reasonably believe that they fall under the definitions and requirements of the Act, despite its vagueness.

176.   This vagueness chills the speech of Fallbrook and the other unlicensed Plaintiff Facilities, who must assume that the Act applies to them and accept the Act's burdens on their speech for fear that the Act's penalties will be applied to them if they do not.

177.   The Act's vagueness gives government officials unbridled discretion to determine whether the unlicensed Plaintiff Facilities are covered under the Act or not, implicating the risk of viewpoint discrimination in violation of Fallbrook's and NIFLA's unlicensed members' rights under the Fourteenth Amendment in conjunction with the First Amendment.

178.   Accordingly, the Act violates Fallbrook's and NIFLA's unlicensed members' Fourteenth Amendment guarantees of due process.

179.   WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

### THIRD CLAIM: VIOLATION OF THE RIGHTS OF PLAINTIFF FACILITIES UNDER THE FIRST AMENDMENT'S FREE EXERCISE OF RELIGION CLAUSE

180.   Paragraphs 1–148 are incorporated as if fully set forth herein.

181.   Plaintiff Facilities exercise their religion in their provision of pro-life information and services, and in the way in which they choose to speak and not speak during the same.

26

182.   Plaintiff Facilities are religious organizations that can and do exercise religion, including in promoting their pro-life message and services.

183.   Forcing Plaintiff Facilities to recite the Act's disclosures substantially burdens the exercise of religious beliefs of Plaintiff Facilities, undermining their pro-life message and the way in which they promote that message in pursuit of their religious beliefs.

184.   The Act is not neutral or generally applicable, including because it exempts certain facilities that offer particular family planning or Medi-Cal services.

185.   Defendants cannot offer sufficient justification to burden Plaintiff Facilities' free exercise of religion by means of the Act.

186.   The Act therefore violates Plaintiff Facilities' rights under the Free Exercise of Religion Clause.

187.   The Act also violates Plaintiff Facilities' "hybrid" rights under the Free Exercise of Religion Clause in conjunction with their freedom of speech.

188.   The First Amendment's Free Exercise of Religion Clause requires the government to satisfy strict scrutiny before it may burden an organization's exercise of religion in conjunction with exercising its rights of speech.

189.   The Act infringes on the hybrid of Plaintiffs' Free Exercise of Religion and Free Speech rights.

190.   Defendants cannot show a compelling interest for imposing the Act on Plaintiff Facilities, nor can they demonstrate that the Act pursues its goals in a means least restrictive of Plaintiff Facilities' rights.

191.    Accordingly, the Act violates the Plaintiff Facilities' First Amendment hybrid rights of Free Exercise of Religion and Free Speech.

192.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

**FOURTH CLAIM: VIOLATION OF THE COATS-SNOWE AMENDMENT, 42 U.S.C. §238N, ALLEGED BY THE LICENSED MEDICAL PLAINTIFF FACILITIES**

193.    Paragraphs 1–148 are incorporated as if fully set forth herein.

194.    Defendants violated, and continue to violate, 42 U.S.C. § 238n by requiring licensed pregnancy centers to provide referrals for abortion and/or to make arrangements for referrals for abortion by requiring such licensed centers to provide contact information for the local county social services office in order to procure abortion services.

195.    By requiring licensed pregnancy centers to provide contact information to local county social services offices for abortion services, Defendants have violated Plaintiffs' rights under 42 U.S.C. § 238n.

196.    Plaintiffs have suffered and continue to suffer injury and irreparable harm by Defendants' actions, thereby giving rise to the need for injunctive, declaratory and other forms of relief against Defendants.

197.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

**FIFTH CLAIM: VIOLATION OF THE FREE SPEECH CLAUSE OF THE CALIFORNIA CONSTITUTION, ART. I, SEC. 2(A). ALLEGED BY ALL PLAINTIFF FACILITIES**

28

198.   Paragraphs 1–148 are incorporated as if fully set forth herein.

199.   The free speech clause of the California Constitution, Art. I, Sec. 2(a), provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

200.   The free speech clause of the California Constitution provides even "broader" and "greater" protections for speech than the First Amendment to the U.S. Constitution. *Gerawan Farming, Inc. v. Lyons*, 101 Cal. Rptr. 2d 470, 486 (Cal. 2000).

201.   The Act unconstitutionally restricts Plaintiff Facilities' rights of free speech, which includes the right to refrain from speaking, to choose how and when to deliver particular messages, and the right to refuse to speak a government-dictated message.

202.   The Act unconstitutionally forces Plaintiff Facilities, on pain of government penalty, to engage in government disclaimers that Plaintiff Facilities would not otherwise recite, that undermine Plaintiff Facilities' message, and that contradict Plaintiff Facilities' viewpoint from which they speak.

203.   The Act is unconstitutionally and substantially overbroad.

204.   The Act's imposition of disclosures on unlicensed Plaintiff Facilities' advertisements is an unjustified restriction of their ability to advertise their messages.

205.   The Act is unconstitutionally underinclusive, because by its Exemption it omits many centers that provide pregnancy related services.

206.   The Act imposes an unconstitutional chill and penalty on Plaintiff Facilities' speech, and without declaratory and injunctive relief, will continue to do so.

207.   The Act is a content-based regulation of speech.

208.   The Act unconstitutionally discriminates against Plaintiff Facilities' speech based on their viewpoint, including because it requires licensed facilities to promote abortion options, and it exempts from the Act's requirements facilities that provide certain family planning or Medi-Cal services.

209.   The Act poses an unconstitutional risk of viewpoint discrimination by conferring unfettered discretion on government officials to interpret the Act's provisions in deciding which unlicensed facilities must comply.

210.   The Act is subject to strict scrutiny.

211.   The Act does not promote any legitimate, or compelling, government interest, and Defendants lack any evidence or sufficient evidence to demonstrate the existence of such an interest.

212.   The Act is not tailored at all, much less narrowly tailored, to further any governmental interest, and it does not do so by a means least restrictive of Plaintiff Facilities' speech.

213.   Defendants have ample alternative channels to achieve any alleged interest without imposing the Act's burdens on the speech of Plaintiffs.

214.   The Act is an unconstitutional restriction of speech under any standard applicable to the licensed Plaintiff Facilities.

215.   The Act is unconstitutional not only as applied to Plaintiff Facilities,

1  but on its face as applied to any facility.

2      216.   Accordingly, the Act violates the free speech clause of the California

3  Constitution, Art. I, Sec. 2(a).

4      217.   WHEREFORE, Plaintiffs respectfully request that the Court grant

5  the relief set forth hereinafter in the prayer for relief.

6

7                              **<u>PRAYER FOR RELIEF</u>**

8  Plaintiffs respectfully request the following relief:

9      A.     Declare the Act unconstitutional under the United States and

10  California Constitutions and in violation of federal statute on its face, and as-

11  applied to Plaintiffs;

12      B.     Enter preliminary and permanent injunctions against enforcement of

13  the Act;

14      C.     Award Plaintiff the costs of the litigation, including reasonable

15  attorneys' fees and expenses under 42 U.S.C. § 1988;

16      D.     Enter preliminary and permanent injunctions ordering Defendant

17  Brown to disgorge federal funds the State of California has received from United

18  States Department of Health and Human Services and other federal offices in an

19  appropriate amount and in excess of $75,000, penalizing them for the injury they

20  threaten to cause Plaintiffs and others, and prohibiting the receipt of further

21  funding until they have remedied that injury, and until they have brought state

22  law into compliance with 42 U.S.C. § 238n; and

23      E.     Award any and all other relief the Court deems just and proper.

1 Plaintiffs demand a jury for all issues so triable

2   Respectfully submitted on this 12th day of October, 2015

3

4         *s/ David J. Hacker*
          DAVID J. HACKER

5          California Bar No. 249272
          Illinois Bar No. 6283022

6          HEATHER GEBELIN HACKER
          California Bar No. 249273

7          Arizona Bar No. 024167

8          ALLIANCE DEFENDING FREEDOM
          101 Parkshore Drive, Suite 100

9          Folsom, California 95630
          (916) 932–2850

10         dhacker@ADFlegal.org
          hghacker@ADFlegal.org

11

12         MATTHEW S. BOWMAN*
          D.C. Bar No. 993261

13         Michigan Bar No. P66239
          ALLIANCE DEFENDING FREEDOM

14         440 First Street, NW, Suite 600
          Washington, DC 20001

15         (202) 393-8690
          mbowman@adflegal.org

16

17         KEVIN H. THERIOT*
          Arizona Bar No. 030446

18         Florida Bar No. 0136761
          Georgia Bar No. 373095

19         Kansas Bar No. 21565
          Missouri Bar No. 55733

20         Tennessee Bar No. 015049
          Texas Bar No. 00788908

21         Virginia Bar No. 38324
          ELISSA M. GRAVES*

22         Arizona Bar No. 030670
          Texas Bar No. 24090135

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@adflegal.org
egraves@adflegal.org

DEAN R. BROYLES**
California Bar No. 179535
THE NATIONAL CENTER FOR LAW AND
    POLICY
539 West Grand Avenue
Escondido, California 92025
(760) 747-4529
dbroyles@nclplaw.org

ANNE O'CONNOR**
California Bar No. 135341
New Jersey Bar No. 7371997
NATIONAL INSTITUTE OF FAMILY AND LIFE
    ADVOCATES
5601 Southpoint Centre Blvd.
Fredericksburg, VA 22407
(540) 372-3930
AOConnor@nifla.org


Attorneys for Plaintiffs

*Application for Admission Pro Hac Vice
forthcoming

** Notice of Appearance forthcoming

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**VERIFICATION OF COMPLAINT**

**PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 12, 2015

*s/ Thomas Glessner* _____
THOMAS GLESSNER, J.D.
President
National Institute of Family and Life Advocates

**VERIFICATION OF COMPLAINT**

**PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing *National Institute of Family and Life Advocates v. Harris* complaint is true and correct to the best of my knowledge.

Executed on October 12, 2015

<u>s/ Josh McClure</u>
JOSH MCCLURE
Executive Director
Pregnancy Care Clinic

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**VERIFICATION OF COMPLAINT**

**PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 12, 2015

_s/ Carolyn Koole_____
CAROLYN KOOLE
Executive Director
Fallbrook Pregnancy Resource Center