1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  NATIONAL INSTITUTE OF FAMILY      )   Civil No. 15cv2277 JAH(DHB)
    AND LIFE ADVOCATES d/b/a NIFLA,   )
11  a Virginia corporation; PREGNANCY )   ORDER DENYING PLAINTIFFS'
    CARE CENTER d/b/a PREGNANCY       )   MOTION FOR PRELIMINARY
12  CARE CLINIC, a California corporation; )  INJUNCTION [Doc. No. 3]
    and FALLBROOK PREGNANCY          )
13  RESOURCE CENTER, a California     )
    corporation,                      )
14                                    )
                 Plaintiffs,          )
15  v.                                )
                                      )
16  KAMALA HARRIS, *et. al.*,         )
                                      )
17               Defendants.          )
    ─────────────────────────────────  )
18

19                    **INTRODUCTION**

20        Currently pending before this Court is the motion for preliminary injunction filed

21  by Plaintiffs National Institute of Family and Life Advocates d/b/a NIFLA ("NIFLA"),

22  Pregnancy Care Center d/b/a Pregnancy Care Clinic, and Fallbrook Pregnancy Resource

23  Center (collectively "Plaintiffs").  The parties fully briefed the motion and appeared before

24  this Court for hearing on the motion on January 28, 2016.  After a thorough review of the

25  parties' submissions, consideration of the argument presented at the hearing and for the

26  reasons discussed below, the Court DENIES Plaintiffs' motion for a preliminary

27  injunction.

28  //

1

## BACKGROUND

2

The plaintiffs in this case are two non-profit pro-life pregnancy centers located in

3

this judicial district and one national network of similar centers.  Plaintiffs filed the instant

4

complaint on October 13, 2015, against Defendants Kamala Harris, in her official capacity

5

as Attorney General for the State of California ("Harris") and Edmund D. Brown, in his

6

official capacity as Governor of the State of California ("Brown")(collectively "the State

7

Defendants"), Thomas Montgomery in his official capacity as County Counsel for San

8

Diego County ("the County Defendant"), and Morgan Foley, in his official capacity as

9

attorney for the City of El Cajon ("the City Defendant").  They allege Plaintiffs will be

10

subject to various civil rights violations when California Assembly Bill 775, known as "the

11

Reproductive FACT Act" ("the Act"), which was signed into law on October 9, 2015,

12

becomes effective.[1]  The Act imposes two professional notice requirements on clinics that

13

provide pregnancy-related services such as Plaintiffs.  The first applies to any clinic that

14

is a "licensed covered facility" and the second applies to any "unlicensed covered facility."

15

Cal. Health & Safety Code § 123471(a) & (b).

16

Section 123471(a) requires licensed covered facilities to provide the following

17

notice:

18

California has public programs that provide immediate free or low-cost access to

19

comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women.  To determine whether you qualify, contact the county social services office at [insert the telephone number].

20

Cal.H&S § 123471(a)(1).  This notice must be either posted at the facility, printed for distribution to clients, or provided digitally to be read by clients upon arrival.

21

Cal. Health & Safety Code §§ 123472(a)(2)(A)-(C).

22

Section 123471(a) also requires unlicensed covered facilities to clearly and

23

conspicuously "disseminate to clients on site and in any print and digital advertising

24

materials including Internet Web sites" the following notice:

25

This facility is not licensed as a medical facility by the State of California and has

26

no licensed medical provider who provides or directly supervises the provision of services.  Cal. Health & Safety Code § 123472(b)(2)-(3).

27

28

[1]The Act became effective on January 1, 2016, after the filing of the complaint and the pending motion, but prior to the hearing on Plaintiff's motion for a preliminary injunction.

15cv2277

Facilities covered under the Act that fail to comply with these requirements "are liable for a civil penalty of five hundred dollars ($500) for the first offense and one thousand ($1,000) for each subsequent offense." Cal. Health & Safety § 123473(a).  The prosecuting authority, including the Attorney General, city attorney or counsel, "may bring an action to impose a civil penalty" but only if both of the following has been done:

(1) Providing the covered facility with reasonable notice of noncompliance, which informs the facility that it is subject to a civil penalty if it does not correct the violation within 30 days from the date the notice is sent to the facility.
(2) Verifying that the violation was not corrected within the 30-day period described in paragraph (1).

Cal. Health & Safety Code § 123473(a)(1)-(2).

Plaintiffs filed the instant motion for preliminary injunction on October 21, 2015. Defendants filed their oppositions to the motion on November 13, 2015[2], and Plaintiffs filed a combined reply brief on November 20, 2015.  Plaintiffs filed a notice of supplemental authority on January 8, 2016.  The parties appeared before this Court for a hearing on the motion on January 28, 2016.

## DISCUSSION

## I.   Legal Standard

A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor.  Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998).  "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" Roe, 134 F.3d at 1402 (citing United States v. Nutri-cology, Inc., 982 F.2d 394, 397 (9th Cir. 1992)).  "[T]he greater the relative hardship to the moving party, the less probability

---

[2]The State Defendants filed objections to certain allegations of the complaint. Because Plaintiffs did not provide any declarations in support of their motion, the Court reviewed the complaint during its analysis of the relevant documents submitted by the parties.  The Court made its assessment as the relevancy and credibility of the allegations contained therein, and determined how much weight to provide to those it deemed relevant in reaching its decision.  Accordingly, the objections are overruled as moot.

1    of success must be shown." <u>National Ctr. for Immigrants Rights v. INS</u>, 743 F.2d 1365,

2    1369 (9th Cir. 1984).  "In cases where the public interest is involved, the district court

3    must also examine whether the public interest favors the plaintiff." <u>Fund for Animals, Inc.</u>

4    <u>v. Lujan</u>, 962 F.2d 1391, 1400 (9th Cir. 1992) (citing <u>Caribbean Marine Servs. Co. v.</u>

5    <u>Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988)).

6    **II.    Analysis**

7          Plaintiffs, who are entities that offer free information and services to women to

8    "empower them to make choices other than abortion," argue "their right to freedom of

9    speech and religion will be violated when the Act becomes effective because it forces them

10   to recite government messages promoting abortion and deterring women from speaking

11   with them." Motion at 1 (Doc. No. 3-1).  Plaintiffs contend these potential violations

12   require this Court to enter a preliminary injunction enjoining the enforcement of the Act

13   until such time as Plaintiffs' claims can be adjudicated.

14   **A.    Likelihood of Success on the Merits**

15         Plaintiffs contend  they have demonstrated a likelihood of success on the merits of

16   their First Amendment free speech and free exercise of religion claims because the Act, by

17   definition, impacts Plaintiffs' rights and fails to survive strict scrutiny.

18         In opposition, all Defendants separately contend no preliminary injunction should

19   issue because Plaintiffs' claims are not ripe for review.  The State Defendants also contend

20   Plaintiffs fail to demonstrate a likelihood of success on the merits of either of their First

21   Amendment claims.  Further, the City Defendant argues, in addition to an "as applied"

22   challenge and facial challenge both failing for no injury in fact and therefore not ripe for

23   review, a facial challenge against him also fails because he did not write or enact the Act.[3]

24   _____

25         [3]The State Defendants also argue the complaint is unverified and, therefore, the
     motion is unsupported by any evidence.  They contend Plaintiffs' verifications which
26   include a qualification that the declarant is testifying to the truth of the allegations to the
     best of his/her knowledge nullifies the evidentiary value of the complaint.
27

28   Plaintiffs argue the case the State Defendants rely on in support of this argument was
     reversed on appeal and multiple other courts find "to the best of my knowledge" complies
     with the requirements of 28 U.S.C. section 1746.  Section 1746 calls for, in any matter

                                            4

1   **1.      Ripeness**

2          All Defendants contend Plaintiffs cannot demonstrate a likelihood of success on the

3   merits of their First Amendment claims on the grounds the claims are not ripe for review.

4   A federal court's judicial power is limited to "cases" or "controversies."  U.S. Const., Art.

5   III § 2.  A necessary element of Article III's "case" or "controversy" requirement is that a

6   litigant must have "'standing' to challenge the action sought to be adjudicated in the

7   lawsuit."  Valley Forge College v. Americans United for Separation of Church and State,

8   Inc., 454 U.S. 464, 471 (1982); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1152 (9th Cir. 2000).

9   The "irreducible constitutional minimum" of Article III standing has three elements.  LSO,

10  205 F.3d at 1152 (internal quotations omitted).  First, the plaintiff must have suffered "an

11  injury in fact — an invasion of a legally protected interest which is (a) concrete and

12  particularized, and (b) actual and imminent, not conjectural or hypothetical."  Lujan v.

13  Defenders of Wildlife, 504 U.S. 555, 560 (1992)(internal citations and quotations

14  omitted).  Second, the plaintiff must show a causal connection between the injury and the

15  conduct complained of; i.e., "the injury has to be fairly . . . trace[able] to the challenged

16  action of the defendant, and not . . . th[e] result [of] the independent action of some third

17  party not before the court."    Id. (quoting Simon v. Eastern Ky. Welfare Rights

18  Organization, 426 U.S. 26, 41-42 (1976))(alterations in original).  Third, it must be

19  "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a

20  favorable decision.  Id. at 561.

21          The Ninth Circuit has found that "ripeness is peculiarly a question of timing,

22  ─────────────────────

23  required to be supported by evidence or proved by sworn declaration and verification, may
    be established by declaration "in substantially the following form:

24          I declare (or certify, verify, or state) under penalty of perjury under the laws of the
            United States of America that the foregoing is true and correct."
25

26  Plaintiffs submit no declarations in support of their motion.  Instead, they rely on the
    allegations of their complaint which provides the following verification, "I declare under
27  penalty of perjury that the foregoing is true and correct to the best of my knowledge."
    Complaint at 34.  Although the verification is not precisely as presented in section 1746,
28  Plaintiffs declare under penalty of perjury the allegations are true.  Accordingly, the Court
    finds Plaintiffs' verification sufficiently complies with section 1746.  See Schroeder v.
    McDonald, 55 F.3d 454, 460 n. 10 (9th Cir. 1995).

15cv2277

designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (citations omitted). In addition, in the Ninth Circuit, a plaintiff must "articulate a concrete plan to engage in conduct subject to the law" in order to pass Constitutional muster. Lopez v. Candaele, 630 F.3d 775, 787 (9th Cir. 2010). However, the Ninth Circuit has also found that "where protected speech may be at stake, a plaintiff need not risk prosecution in order to challenge a statute." Wolfson v. Brammer, 616 F.3d 1045, 1059-60 (9th Cir. 2010); see also Bland v. Fessler, 88 F.3d 729, 736-37 (9th Cir. 1996).

The County Defendant argues the instant complaint fails to allege a genuine threat of imminent prosecution, in that it fails to allege a "concrete plan" to violate the Act, and does not allege Defendants warned or threatened to file a civil enforcement against Plaintiffs. The County Defendant also argues Plaintiffs cannot be harmed by the mandatory disclosures if they do not make them.

The City Defendant agrees. In addition, the City Defendant argues Plaintiffs cannot demonstrate a likelihood of success on the merits on either an "as applied" basis or on a "facial challenge" to the constitutionality of the Act. The City Defendant maintain Plaintiffs do not allege an injury due to any application of the Act and, thus, any "as applied" challenge fails.

The State Defendants argue Plaintiffs fail to meet both the constitutional and prudential components of the judicial ripeness determination. Specifically, as to the constitutional considerations, the State Defendants contend Plaintiffs fail to show they face a realistic danger of sustaining a direct injury because Plaintiffs fail to identify any actual or credible threat of enforcement by any of the defendants. The State Defendants further argue Plaintiffs' "scattershot naming of defendants" belies their claim of injury because, if there was a credible threat, Plaintiffs would know who to sue instead of "casting such wide net to catch all potential defendants." State Defendants' Opp. at 12 (Doc. No. 23).

In regards to prudential considerations, the State Defendants contend "there is a dearth of facts for this Court to analyze," rendering this case not fit for judicial review until discovery has been done.  Id.  In addition, the State Defendants contend Plaintiffs will suffer no hardship if the Court does not grant the preliminary injunction since the Act requires a 30-day period before any Defendant could bring an action to impose a civil penalty for failure to comply.  The State Defendants claim the issues in this case echo the prudential concerns in Thomas, in which the Ninth Circuit found the case devoid of facts and therefore not ripe for review.

Lastly, the State Defendants argue Plaintiffs also fail to establish associational standing as alleged in the complaint, which the State Defendants explain is often intertwined with ripeness.  They maintain there is insufficient evidence in the record to determine if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  State Def's Opp. at 14 (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

In reply, Plaintiffs argue First Amendment precedent shows that in a free speech challenge, they need not wait until the police issue a warning or citation before they can challenge a law.  Plaintiffs contend the Thomas case is inapposite because it involved a law that prohibited landlords from discriminating against non-married applicants but the plaintiffs had no such applicants and could not predict when such applicants might apply, thus providing good reason for finding no "concrete plan."  Here, however, Plaintiffs argue the opposite is true, in that the only precondition was the January 1, 2016 effective date of the statute.  Plaintiffs contend the complaint contains allegations showing they intend to engage in pregnancy-related speech as they have done in the past and that, alone, will be in violation of the Act.

Plaintiffs further argue they plead a desire to do what the Act bans just as in Wolfson which they maintain provides the correct application of the "concrete plan" issue.

Plaintiffs disagree with Defendants' interpretation of the Act as not requiring disclosures until a warning is given, claiming such interpretation is false. Although Plaintiffs admit the imposition of fines only occur after a warning is given, Plaintiffs maintain the failure to make disclosures are still illegal independent of the fines. Plaintiffs contend that "[r]ecently enacted statutes impose a presumably reasonable fear of prosecution" and the Court should "'relax the requirements of standing and ripeness' so that a plaintiff 'need not await prosecution to seek preventative relief.'" Plas' Reply at 5 (Doc. No. 30) (quoting Wolfson, 616 F.3d at 1060).

Plaintiffs argue prudential standing exists because the Act, by its terms, "'requires an immediate and significant change in Plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." Id. at 5-6 (quoting Wolfson, 616 F.3d at 1060). Plaintiffs further argue no factual issues need be developed because the Act will stand or fall primarily based on its language and the government's justification, not enforcement.

As indicated by the parties, the Act became effective January 1, 2016. Plaintiffs express their desire not to utter the disclosures required by the Act which they allege are detrimental to their mission and undermine "the content, context and tone of the viewpoint that they wish to deliver to their pro-life messages." Complaint ¶¶ 121, 122, 131. They express their intention "to not comply with the Act" for those reasons. Id. ¶ 123. The Court finds Plaintiffs present a concrete plan to violate the act.

While no one has threatened to institute enforcement proceedings against Plaintiffs for their failure to comply with the Act, Defendants do not suggest the Act will not be enforced. Plaintiffs sufficiently allege a "credible threat of prosecution" for failure to comply with the Act. See Lopez, 630 F.3d at 785.

The Court also finds based upon Plaintiffs' clear intention not to comply with the Act due to their mission and pro-life views and the text of the Act, the record provides sufficient factual context to support their position that the action is ripe for judicial review.

//

//

8

15cv2277

2.       Merits of Plaintiffs' Claims

The State Defendants also contend Plaintiffs fail to demonstrate a likelihood of success on the merits on each of Plaintiffs' First Amendment claims.

Additionally, the City Defendant argues an facial challenge to the Act fails against him because he did not draft or enact the Act.

a.       The State Defendants

i.       Free Speech Claim

The State Defendants argue there is no likelihood Plaintiffs will succeed on their free speech claim as to the two notice requirements applicable to licensed and unlicensed facilities.

A.       Licensed Facilities

The State Defendants argue the notice requirement for licensed facilities regulates conduct, not speech.  Relying on the holding in Pickup v. Brown, the State Defendants contend the activities at issue here concern the delivery of pregnancy-related health care services and do not concern expressive activity.  740 F.3d 1208 (9th Cir. 2013).  They claim the required disclosure at issue "involves a limited informational disclosure within the context of providing those professional services" and does not prohibit Plaintiffs "'from imparting information or disseminating opinions.'"  State Defs' Response at 16 (quoting Pickup, 740 F.3d at 1230).  The State Defendants point out the statute does not prohibit a center from mentioning, discussing or advocating its pro-life viewpoint or even communicating its disagreement with the statute itself.  Thus, the State Defendants contend, because the Act regulates conduct, it is subject only to rational basis review.

Even if the notice requirements are considered compelled speech rather than conduct, the State Defendants argue they concern commercial speech subject to rational basis review.  According to the State Defendants, it is often difficult to distinguish between commercial and non-commercial speech.  They maintain discovery on the precise nature of the transactions at Plaintiffs' pregnancy centers will further inform the Court but, even at this early stage of the proceedings, it is clear the speech at issue here involves

commercial speech.  <u>Id</u>.

The State Defendants dispute Plaintiffs' argument against any commercial speech analysis, which is based on Plaintiffs' non-profit status.  They argue, even if true, lack of profit is not relevant to the determination of whether speech is commercial or non-commercial.  The State Defendants further argue the lack of funds exchange does not render speech non-commercial because the provision of goods and services of value is sufficient to be considered commercial.

The State Defendants maintain the notice requirement in this case for licensed facilities contain only pure factual and incontrovertible information that simply provides notice about the full spectrum of pregnancy-related public health services and a phone number for further information.  They argue the required disclosure is informational and, thus, is objective and akin to other commercial disclosures upheld by the courts as meeting constitutional muster.  Therefore, they maintain, only rational basis review is required here.

Relying on <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, the State Defendants further argue, even if the Court finds the speech at issue is not commercial speech subject to rational basis review, it should be upheld like other abortion-related disclosures have been.  505 U.S. 833, 882-84 (1992).  According to the State Defendants, <u>Casey</u> and its progeny hold the state can use regulatory authority to require physicians to provide information regarding abortion in a non-misleading, truthful way even if the information might encourage the patient to choose something other than abortion.

The State Defendants also argue, even if the Court applies heightened scrutiny, the notice requirement would survive constitutional review.  The State Defendants maintain the legislative history indicates the Act was enacted to "ensure that California residents make their personal reproductive health care decisions knowing their rights and the health care services available to them," to support their arguments for the government interests at stake.  State Def's Motion at 23 (quoting Assem.Bill No. 775, § 2).  They argue the interest becomes more compelling when viewed in light of the history of "crisis pregnancy

15cv2277

1   centers" as discussed in AB 775's legislative history. [4]

2       The State Defendants also argue the notice requirement is narrowly tailored to

3   advance the government's interest of insuring women are informed about all their health

4   care options in regards to pregnancy.

5       In reply, Plaintiffs argue the State Defendants' rationale demonstrates the Act must

6   be subject to strict scrutiny because it is content and viewpoint discrimination.  Plaintiffs

7   explain the State defendants admit "the Act's purpose and justification are to target 'crisis

8   pregnancy centers' that 'aim to discourage and prevent women from seeking abortions,'

9   by 'deceptive advertising and counseling practices [that] often confuse, misinform, and

10  even intimidate women." Plas' Reply at 7 (quoting State Defs' Response at 23).  Plaintiffs

11  argue this interpretation is clearly content and viewpoint based, in that the Act aims to

12  counteract the crisis pregnancy centers' pro-life viewpoint.  Plaintiffs cite to Sorrell v. IMS

13  Health, Inc., in which the Supreme Court found legislative content concerning

14  medical/pharmaceutical regulations confirmed "that the law's express purpose and practical

15  effect are to diminish the effectiveness of marketing by manufacturers of brand-name

16  drugs" and, thus, the Court determined the law went "beyond mere content

17  discrimination, to actual viewpoint discrimination."  131 S.Ct. 2654, 2663-64 (2011).

18  Plaintiffs argue the same conclusion should be made here because the State has openly

19  expressed disagreement with the content of Plaintiffs' speech and directly targeted that

20  viewpoint.

21      Plaintiffs contend the speech cannot be considered commercial speech because they

22  lack commercial elements as non-profit groups and provide their services and speech for

23  _____

24      [4]The author contends that, unfortunately, there are nearly 200 licensed and
    unlicensed clinics known as crisis pregnancy centers (CPCs) in California whose goal is to
25  interfere with women's ability to be fully informed and exercise their reproductive rights,
    and that CPCs pose as full-service women's health clinics, but aim to discourage and
26  prevent women from seeking abortions.  The author concludes that these intentionally
    deceptive advertising and counseling practices often confuse, misinform, and even
27  intimidate women from making fully-informed, time-sensitive decisions about critical
    health care.
28  Assem. Comm. on Health, Analysis of Assembly Bill No. 775 (2015-2016 Reg. Sess.)
    April 14, 2015, at 3.

1   free.  They maintain other courts have held pregnancy centers like Plaintiffs are not

2   commercial in nature and thus, not subject to commercial speech regulations.

3        Plaintiffs further argue the proper inquiry regarding commercial speech is whether

4   there is an actual commercial purpose or sole economic interest for a transaction not

5   whether the services have value.  Plaintiffs assert they have no such purpose and disagree

6   with the State Defendants' contentions to the contrary.

7        In addition, Plaintiffs argue the State Defendants misinterpret both <u>Pickup</u>, and

8   Casey.  They maintain <u>Pickup</u> banned treatment, not speech as in this case, and <u>Casey</u>

9   involved "informed consent" which is not at issue here.   Lastly, Plaintiffs argue the Act

10  fails not only strict scrutiny but also fails intermediate scrutiny as commercial speech.

11       The Court must first determine whether the Act, which concerns patient and

12  medical provider relationships, regulates conduct or speech and finds the reasoning in

13  <u>Pickup</u> crucial to this determination.  In <u>Pickup</u>, the Ninth Circuit viewed the issue of

14  regulation of a professional's conduct and speech along a continuum.  740 F.3d at 1227.

15  It recognized at one end of the continuum, a professional engaged in a public dialogue is

16  entitled to the greatest First Amendment protection.  <u>Id</u>.  At the midpoint of the

17  continuum, First Amendment protection of a professional's speech within the confines of

18  the professional relationship is somewhat diminished.  <u>Id</u>. at 1228.   At the other end of

19  the continuum, the court recognized the state's power to regulate professional conduct is

20  great.  <u>Id</u>. at 1229.

21       The Act does not ban speech or otherwise prohibit Plaintiffs from discussing their

22  message with patients.  Instead, the Act requires medical providers to advise their patients

23  of various types of treatment available so patients are fully informed when making

24  decisions regarding their pregnancies.  Similar to the regulation in <u>Pickup</u>, the Act permits

25  discussion about treatment and expressing opinions including their messages regarding

26  abortion.  The Court finds the providers' action in informing patients of their treatment

27  options is professional conduct subject to rational basis review.  <u>Id</u>. at 1231.  The state

28  clearly has a legitimate interest in ensuring pregnant woman are fully advised of their

rights and treatment options when making reproductive health care decisions and the required disclosure is undeniably rationally related to that interest.

Even if speech is implicated, the Court finds the Act regulates professional speech. Under the Act, licensed facilities are required to make a disclosure when providing pregnancy related services to patients.  A licensed facility is defined as a facility "whose primary purpose is providing family planning or pregnancy-related services and that satisfies two or more of the following:

> (1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women.
> (2) The facility provides, or offers counseling about, contraception or contraceptive methods.
> (3) The facility offers pregnancy testing or pregnancy diagnosis.
> (4) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.
> (5) The facility offers abortion services.(6) The facility has staff or volunteers who collect health information from clients."

Cal. Health & Safety Code § 123471 (a)

The Act clearly addresses the medical provider-patient relationship, and is therefore, properly classified as professional speech.  See Wollschlaeger v. Governor of the State of California, --- F.3d —, 2015 WL 8639875 (11th Cir. 2015).  This Court disagrees with Plaintiffs that this case differs from Casey because it does not involve informed consent. In Casey, the United States Supreme Court upheld a Pennsylvania statute requiring physicians performing abortions make certain disclosures regarding the nature of the procedure, the availability of printed materials describing the unborn child and include a list of agencies offering alternatives to abortion, among other things.  404 U.S. at 882-84. The plurality in Casey explained:

> All that is left of petitioners' argument is an asserted First Amendment right of a physician not to provide information about the risks of abortion, and childbirth, in a manner mandated by the State.  To be sure, the physician's First Amendment rights not to speak are implicated [internal citations omitted], but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State [citation omitted].  We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here.

Id. at 884.

As evidenced by the legislative history, the purpose of the Act's disclosure requirement is

to ensure pregnant women receive non-misleading information so they are fully-informed when making decisions regarding critical health care. As such, the Court finds if the disclosure required by the Act is considered speech, it is professional speech.

The court in <u>Pickup</u> recognized "the First Amendment tolerates a substantial amount of speech regulation within the professional-client relationship that it would not tolerate outside of it." 740 F.3d at 1228. Because it ultimately found the regulation at issue in <u>Pickup</u>, regulated conduct, the court did not discuss the proper level of scrutiny for professional speech. However, the court did recognized the protection afforded professional speech was diminished. <u>See id</u>. This suggests intermediate scrutiny is the proper level of scrutiny for professional speech.

The Court finds the Act survives intermediate scrutiny. The Act's disclosure requirement directly advances the government's substantial interest in ensuring pregnant women are fully advised of their rights and available services when making reproductive health care decisions. Additionally, the statute is not a broad, content-based restriction of speech. To the contrary, the required notice is neutral as to any particular view or opinion and merely provides information regarding the various health care options available. Further, the Act does not preclude Plaintiff from providing all manner of beneficial advice, including alternatives to abortion. Nor does the Act express a particular view or make a recommendation and, as such is not more than necessary to serve the state's interest. Importantly, the Act does not preclude Plaintiffs from openly expressing disagreement with the required disclosure.

Therefore, Plaintiffs fail to demonstrate a likelihood of success on the merits of their free speech claim with respect to the licensed facilities notice requirement.

**B.    Unlicensed Facilities**

The State Defendants also argue the notice requirement applicable to unlicensed facilities meets constitutional muster. As with the licensed facilities' notice requirement, the State Defendants maintain the requirement requires only rational basis review because it "simply directs unlicensed covered facilities to disseminate to 'clients on site' and in any

1   'advertising materials' a short, neutral statement advising of its status as a facility not

2   licensed as a medical facility by the State of California."  State Def's Opp. at 26. (quoting

3   Cal.Health & Safety Code § 123472(b)(1)).  The State Defendants contend the notice

4   requirement in this case is similar to those upheld by the Second Circuit in Evergreen

5   Ass'n, Inc. v. City of New York,  740 F.3d 233, (2d Cir.), cert. denied sub nom., 135 S.Ct.

6   435 (2014),  and the Fourth Circuit in  Centro Tepeyac v. Montgomery Cnty., 722 F.3d

7   184, 189-90 (4th Cir. 2013), and argue it likewise withstands any level of scrutiny, even

8   strict scrutiny.[5]

9        Plaintiffs argue, to the extent Evergreen held a disclosure required unlicensed

10  facilities to declare they do not have medical providers survives strict scrutiny, the holding

11  is not persuasive.

12       The Court agrees the notice requirement for unlicensed facilities withstands any

13  level of scrutiny.  The state's interest in ensuring pregnant women know when they are

14  receiving medical care from licensed professions and when they are not is compelling.

15  Further, the Act which merely requires a notice that a facility is not licensed and has no

16  licensed medical provider on staff is narrowly tailored to achieve that compelling interest.

17  Accordingly, Plaintiffs fail to demonstrate a likelihood of success on the merits of their free

18  speech claim as to the unlicensed facilities notice requirement.

19  //

20

21       [5]In Evergreen, the Second Circuit found the disclosure to be the "least restrictive
22  means to ensure that a woman is aware of whether or not a particular pregnancy services
    center has a licensed medical provider at the time that she first interacts with it.  740 F.3d
    at 246.  Such law is required to ensure that women have prompt access to the type of care
23  they seek."  Id. at 247.  The Evergreen court also explained that the alternative measures
    suggested by the plaintiffs, such as, City-sponsored advertisements and signs posted
24  outside of the centers "will not accomplish the City's compelling interest."  Id.  In
    addition, the court rejected the argument that the statute is over-inclusive because not all
25  pregnancy centers engage in deception.  Id.

26  The Fourth Circuit, in Centro Tepeyac, concluded the district court properly refused to
    preliminarily enjoin enforcement of a county ordinance requiring pregnancy centers post
27  a sign stating no licensed medical professional was on staff. 722 F.3d at 189-90.  The Court
    concluded the district court properly found the requirement served the county's
28  compelling interest in "preserving public health" and was narrowly tailored to meet that
    interest.  Id. at 190.

15cv2277

ii.      **Free Exercise of Religion Claim**

The State Defendants argue Plaintiffs' free exercise of religion claim lacks merit because "the requirements of the Act 'appl[y] throughout the [State of California], and there is not even a hint that [Plaintiffs were] targeted on the basis of religion for varying treatment' in the application of the law.'" State Def's Opp. at 30 (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1032 (9th Cir. 2004). They maintain this conclusion is apparent from the plain text and legislative history of the Act. Therefore, they argue, the burden on Plaintiffs' free exercise of religion does not violate the First Amendment.

Plaintiffs do not address Defendants' contentions in reply.

The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), "forbids all laws 'prohibiting the free exercise' of religion." McDaniel v. Paty, 435 U.S. 618, 620 (1978) (quoting U.S. Const. amend. I). Laws that are neutral and of general applicability "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993) (quoting Employment Division, Department of Human Resources of Ore. v. Smith, 494 U.S. 872, 879 (1990)). The rational basis test applies to laws meeting the neutral and general applicability criteria. See Miller v. Reed, 176 F,3d 1202, 1206 (9th Cir. 1999). "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. Church of Lukumi, 508 U.S. at 531 - 32. "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral...." Id. at 533, 113 S.Ct. 2217. A law is not generally applicable if it, "in a selective manner [,] impose[s] burdens only on conduct motivated by religious belief." Id. at 543.

The object of the Act is to ensure pregnant women are fully informed of their health care options and when they are obtaining treatment from licensed providers. Thus, the

Act is neutral. Additionally, the Act is generally applicable. While clinics operated by the United States and clinics enrolled as a Medi-Cal provider and a provider in the Family Planning, Access Care and Treatment Program are exempt from the licensed facility required notice because they already provide the entire spectrum of services required of the notice, in that Plaintiffs contend discovery is not necessary to rule on the instant motion, this Court finds there is no evidence to suggest the Act burdens only conduct motivated by religious belief.

As discussed in detail above, the Court finds the Act survives not only rational basis but strict scrutiny review. Accordingly, Plaintiffs fail to demonstrate a likelihood of success on the merits of their free exercise claim.

### b.      The City Defendant

The City Defendant argues any facial challenge cannot be brought against him because he did not draft or enact the Act. This Court agrees. As such, Plaintiff fails to show a likelihood of success on any facial challenge against the City Defendant.

Although the Court finds Plaintiffs fail to demonstrate a likelihood of success on the  merits of their claims, the Court finds serious questions are raised. Therefore, this Court must address the balance of hardships. See Anderson, 134 F.3d at 1402.

### B.      Irreparable Harm, Balance of Hardships and Public Interest

Plaintiffs argue they clearly will suffer irreparable harm absent an injunction because any loss of a constitutional right is presumed to be irreparable injury. They further argue the balance of hardships tips in their favor because their free speech and free exercise rights will be burdened if an injunction does not issue. They maintain the State will suffer little if any harm because it could serve its interests by other means. Plaintiff also contend the public interest is served by an injunction because "free speech serves societal interests. . .by protecting those who wish to enter the marketplace of ideas from government attack." Plas' Motion at 25 (quoting Pacific Gas & Electric Co. v. Pub. Utils. Comm'n of Cal., 475 U.S. 1, 8 (1986)).

The County Defendant argues Plaintiffs fail to show irreparable harm because a civil

enforcement action can only be filed against Plaintiffs 30 days after a notice of non-compliance is filed and no notice has been issued.  Additionally, the County Defendant maintains Plaintiffs' argument that any loss of a constitutional right is presumed to be irreparable injury fails because Plaintiffs allege they intend not to comply with the Act, and therefore, cannot be harmed by the mandatory disclosures they do not make.

The State Defendants argue Plaintiffs fail to meet their burden of demonstrating irreparable injury because their constitutional claim is unsupported and fails as a matter of law.  They also argue if this Court enjoins the Act it will harm millions of California women who are in need of publicly funded family planning services, education, support and prenatal care, but are unaware of the programs and services available.  They further argue an injunction will also prevent pregnant women in California from knowing when they are getting medical care from licensed professionals.  The State Defendants also maintain Plaintiffs will remain free, if the Act is not enjoined, to advance their pro-life viewpoint because nothing in the Act prohibits such expression.

The City Defendant argues because there are no allegations that the City Defendant issued a specific warning or threat to initiate proceedings against Plaintiffs, they fail to show irreparable injury.[6]

The Court finds Plaintiff fails to demonstrate irreparable harm.  They rely on the violation of their First Amendment rights to support irreparable harm, but, as discussed in detail above, Plaintiff fail to support their argument of a constitutional violation.  Additionally, the Court finds the balance of hardships tips in favor of the state, city and county and the interest in protecting its citizens.  Finally, public policy favors denial of the motion for preliminary injunction.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Plaintiff's motion for a

//

---

[6]. In addition, the City Defendant argues there is no history of enforcement because the Act has yet to be effective to render Plaintiffs' fear of prosecution reasonable.  In that the Act is now effective, this argument is moot.

15cv2277

1   preliminary injunction is **DENIED.**

2   Dated:          February 8, 2016

3

4                                                                  JOHN A. HOUSTON
                                                                   United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15cv2277